IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:08-cr-54 |
| | ) | |
| Howard O. Kieffer, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | |

_____

Before the Court are the Defendant's motion for judgment of acquittal and motion for new trial. For the reasons explained below the motions are denied.

**I      BACKGROUND**

The Defendant was charged with one count of mail fraud and one count of making a false statement. The false statement charge related to a petition for admission to the Bar of the United States District Court for the District of North Dakota submitted by the Defendant in which the Defendant falsely claimed to be a law school graduate and a member of the bar of another federal court. The mail fraud claim related to the Defendant's use of his admission to the Bar of the United States District Court for the District of North Dakota in order to gain admission to the Bar in other courts and that he represented a number of individuals in various courts and was paid for his efforts. A jury convicted the Defendant on both counts after a short trial. The Defendant did not testify or call any witnesses. The defense was limited to contesting the Government's proof and the offer of one exhibit relating to Kieffer's participation in a case before the Ninth Circuit.

Rule 29 motions for judgment of acquittal were made at the close of the Government's case and at the close of all the evidence. The motions were taken under advisement and later denied in a written order order issued a few days after trial. See Docket No. 99. The Defendant

has since filed a renewed motion for judgment of acquittal and a motion for new trial. It is these motions which are now under consideration.

## II. DISCUSSION

### A. Motion for Judgment of Acquittal

In reviewing a motion for judgment of acquittal the court must view the evidence in a light most favorable to the jury's verdict, drawing all reasonable inferences in favor of the government. United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006). The conviction must be upheld as long as there exists some interpretation of the evidence which would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. Id. A jury verdict will be reversed only if a jury must have had a reasonable doubt as to one of the essential elements. Id. Where the evidence could support a guilty or a not guilty verdict depending on conflicting theories of the case the jury's verdict must be upheld. Id.

#### 1. Mail Fraud

The Defendant argues the Government failed to prove any of the elements of mail fraud beyond a reasonable doubt. The Court instructed the jury as to the elements of mail fraud as follows:

> One, Howard O. Kieffer voluntarily and intentionally devised or made up a scheme to defraud another out of money or property by means of material false representations or promises, which scheme is described as follows:
>
> Howard O. Kieffer fraudulently gained admission to the Bar of the United States District Court for the District of North Dakota by falsely representing that he had obtained a law degree from the Antioch School of Law in Washington, D.C.; and that he was properly admitted to practice law in the Central District of California and the Ninth Circuit Court of Appeals. The Defendant used said admission to fraudulently gain admission to other courts and obtain money from individuals for legal services.
>
> Two, Howard O. Kieffer did so with the intent to defraud; and

>Three, Howard O. Kieffer used, or caused to be used, the mail, a private interstate carrier, or a commercial interstate carrier in furtherance of, or in an attempt to carry out, some essential step in the scheme.

Docket No. 91.

The scheme was rather obvious: dupe a number of courts and lawyers into thinking the Defendant was a lawyer, solicit clients based upon his admission to several courts and representations that he was a lawyer, represent them, and collect fees for having done so. Several lawyers, court officials, and clients testified as to the Defendant's conduct and representations. The quality of work performed is irrelevant, although described as good by one Government witness. The Defendant could never have secured admittance to the bar if he had been truthful and he could not have secured any clients if he had not fraudulently held himself out as an attorney.

The intent to defraud was plain and may be rightly inferred from the Defendant's repeated false statements. He collected money for his legal services despite having no formal legal training and while holding himself out as an attorney. Ken Henderson testified that he hired the Defendant because he thought the Defendant was an attorney and that, when confronted, the Defendant maintained that he was an attorney. See Docket No. 106 at 142.

The use of the mails or a private or interstate carrier was proved through the testimony of Ms. Svihl. Ms. Svihl was Mr. McCabe's legal assistant. She opened the mail which contained the Defendant's petition for admission to the bar. Mr. McCabe, thinking the Defendant was an attorney, moved for the Defendant's admission to practice. Ms. Svihl testified that the petition arrived by either the mail, UPS, or FedEx. See Docket No. 105 at 66-67. This testimony was sufficient to prove the third element.

The Defendant argues the jury improperly inferred the use of a the mails or a private or interstate carrier. Ms. Svihl's testimony was that the petition arrived via one of two methods, both

of which are sufficient to prove the third element.  No inference was necessary.  Even were an inference drawn it would not be improper.  The Court specifically instructed the jury that they were "permitted to draw, from the facts which you find have been proven, such reasonable inferences as you feel are justified in light of experience and common sense."  See Docket No. 91 at 14.  There was no evidence whatsoever that the petition arrived by other than the mail or a private or commercial interstate carrier.

### 2. False Statements

The Defendant argues that the Government failed to prove beyond a reasonable doubt the false statements which Kieffer made in his petition for admission to the bar of the United States District Court for the District of North Dakota were material.  Specifically, the Defendant argues his statements regarding his graduation from Antioch School of Law and his admission into the bar for Central District of California, while admittedly false, were not material.  The petition for admission to the bar of the United States District Court for the District of North Dakota also listed the Defendant as having been admitted to practice before the Court of Appeals of the Ninth Circuit.  The argument seems to be that since he had been admitted to practice before the Ninth Circuit the other two fabrications do not matter.

Much of the Defendant's motion revolves around his admission to the Ninth Circuit.  He maintains the Government did not prove his admission to the Ninth Circuit was fraudulent.  The argument fails. The Government proved that the Defendant never graduated from college and never attended any law school, including Antioch Law School which closed in 1986. See Docket No. 106 at 165-70.  An undergraduate college degree is one prerequisite for attending law school.  The Defendant has no undergraduate degree.  And having never attended law school he could never have sat for a bar exam or been admitted to practice by the highest court of any state.  All of this aptly demonstrates the Defendant could never have been properly admitted to practice in

Ninth Circuit. See Fed. R. App. P. 46. When the Ninth Circuit caught wind of the fraud it issued an order to show cause. Rather than respond, the Defendant resigned and Ninth Circuit vacated his admission. See Ex. 29. It is a simple step, using common sense and logical inference, to conclude from this evidence that the Defendant was never properly admitted to practice in the Ninth Circuit. The Defendant's admission in the Ninth Circuit was a fraud. One fraud successfully completed does not legitimize subsequent frauds.

It is unquestionably true that the Defendant's petition would have been denied had it been known he had never attended or graduated from law school. Why else would Chief Judge Hovland have issued an order to show cause? See Ex. 6. The Court has no trouble concluding the false statements were quite material and the jury properly regarded them as such.

### 3. Entrapment by Estoppel

In his motion for judgment of acquittal, the Defendant raises, for the first time, the defense of entrapment by estoppel. The defense of entrapment by estoppel applies when a government official affirmatively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice. United states v. Benning, 248 F.3d 772, 775 (8th Cir. 2001); United States v. Achter, 52 F.3d 753, 754 (8th Cir. 1995). The burden of proof is on the defendant to establish that he was misled into believing his conduct was legal and his reliance on the statement was reasonable. United States v. Benning, 248 F.3d 772, 775 (8th Cir. 2001); United States v. Austin, 915 F.2d 363, 365 (8th Cir. 1990).

The Defendant argues the Government failed to prove he was not properly admitted to practice before the Ninth Circuit and that he relied upon his admission to the Ninth Circuit. As the Court explained above, the Government did provide sufficient evidence for a finding that the Defendant was not properly admitted to practice before the Ninth Circuit. See Ex. 29. The Defendant did not testify at his trial and has provided no evidence regarding the reasonableness of

his reliance.  Given his lack of any legal education and his prior felony convictions, the Defendant could not have reasonably believed he was properly admitted to practice before the Ninth Circuit.  Any argument in support of this position fails plainly.

Entrapment is an affirmative defense and as such the question of entrapment is generally to be decided by the jury. United States v. Crump, 934 F.2d 947, 956 (8th Cir. 1991).  The defense of entrapment by estoppel also appears to be a jury issue. See United States v. LaChapelle, 969 F.2d 632, 637 (8th Cir. 1992)(discussing entrapment by estoppel jury instruction); United States v. Austin, 915 F.2d 363, 365 (8th Cir. 1990)(same).  No such jury instruction was requested or given in this case.

### B. Motion for New Trial

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A trial court has broad discretion in deciding whether or not to grant a new trial. See United States v. Walker, 393 F.3d 842, 848 (8th Cir. 2005).  The Eighth Circuit has made it clear that "[m]otions for new trial are generally disfavored and will only be granted where 'a serious miscarriage of justice may have occurred.'" United States v. Rice, 449 F.3d 887, 893 (8th Cir. 2006)(citations omitted).  In determining whether a miscarriage of justice has occurred the Court "weighs the evidence and evaluates anew the credibility of the witnesses." United States v, Davis, 103 F.3d 660, 668 (8th Cir. 1996).

#### 1. Verdict

The Defendant argues the evidence weighs heavily against the verdict and a new trial should be granted.  From the Court's perspective, the verdict was well-supported by the evidence.  The witnesses were credible.  The evidence against the Defendant was overwhelming.  No

miscarriage of justice has occurred.

### 2. Continuance

The Defendant also argues, albeit briefly, that he deserves a new trial because of the Court's refusal to continue trial which was scheduled during the Jewish Passover Holiday. The Court twice rejected this argument prior to trial. See Docket Nos. 58 & 69. The Defendant has not provide any new facts or arguments which would persuade the Court that it erred.

### 3. Subpoena Service

The Defendant argues the Ninth Circuit inadequately responded to two sets of subpoenas which were served prior to trial. Although the Ninth Circuit did produce some documentation in response to the subpoena, the Defendant argues that all the requested documents were not provided and no witnesses appeared at trial or contacted defense counsel.

The Court was not made aware of this situation prior to or during the trial. Only now, in his post-trial motions, does the Defendant raise the issue. In failing to raise the issue in a timely fashion the defendant has effectively waived it. The Court is no longer in a position to assist with subpoena compliance. No request for a continuance was made because of the alleged non-compliance. In addition, the Defendant fails to explain exactly what documents should have been produced by the Ninth Circuit or what testimony might have been elicited from the Ninth Circuit records custodian. The Defendant has not demonstrated this alleged failure by the Ninth Circuit to adequately respond to his subpoenas denied him a fair trial. See United States v. Youngman, 481 F.3d 1015, 1017 (8th Cir. 2007).

### 4. Closing Argument

The Defendant argues that counsel for the Government made two improper and prejudicial comments during closing arguments. Prosecutorial misconduct during a closing argument can result in the reversal of a conviction if the prosecutor's conduct or remarks are improper and the

conduct or remarks prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial. United States v. Davis, 534 F.3d 903, 914 (8th Cir. 2008). Closing arguments must be limited to the evidence and the logical inferences that can be drawn from the evidence. Id. To determine whether a defendant received a fair trial the court must consider the cumulative effect of the misconduct, the strength of the properly admitted evidence of the defendant's guilt, and what curative actions, if any, were taken. Id. at 915.

The Defendant did not make any objection during the trial to the two remarks which he now challenges. Since no objection was made the Court had no opportunity to deal with the allegedly improper comments during the trial. In addition, as the Court has noted several times in this opinion, the Government had a very strong case.

> The first comment related the Defendant lacking a license to practice law.
>
> You know, when I told my wife about this case she said, "Well, didn't anybody ask to see his credentials?" And it was really hard for me to explain to her that, you know, we don't really show credentials. Now, attorneys have law licenses. In fact, I have a little card here that says "License to Practice Law." I get one of these every year after I pay my fee, and I get it and then I put it away, and this --I think this is the first time in almost 20 years of my practice of law that I've actually used it.
>
> When you go to the doctor, do you ask to see his credentials? Sometimes the diploma is on the wall, but, no, when the person walks in in their scrubs and stethoscope around his neck, do you ask him to see his medical license? No, you presume someone else has done that, just like Ken Henderson did, just like Natasha Caron did, just like Joel Wells did, to name a few.

Docket No. 106 at 193-94.

This statement would seem to be a fair comment on the necessary credentials for learned professions and the Defendant's lack of such credentials. Much of the case centered on what education, admissions, licenses and the like are necessary for attorneys to practice law. Evidence was presented that the Defendant attended law conferences and held himself out as a lawyer. Several attorneys testified they believed the Defendant was a lawyer. The prosecution was trying

8

to make the point that attorneys rarely show their credentials and it was understandable that attorneys attending a conference for attorneys would assume that all those in attendance are also attorneys. Showing his law license to the jury was nothing more than using a demonstrative aid to make this point. The Court does not view these comments as a suggestion defense counsel lacked the proper education, licensure, and admissions. When viewed in context, the Court sees nothing improper.

> The second comment related to acceptance of responsibility.
>
> But think about this when you deliberate this case. Who took advantage of the system? Who made misrepresentations, and who profited from the misrepresentations? Your answers will be Howard Kieffer, Howard Kieffer, and Howard Kieffer. And don't lose sight of who is on trial here and, most importantly, who's not accepting the responsibility. Again, the answer is Howard Kieffer.

Docket No. 106 at 194.

The Defendant argues the "who's not accepting responsibility" was an improper comment on the Defendant's election not to testify. The Government maintains that the comment in question was made in order to rebut the Defendant's attempt to shift the blame to the Ninth Circuit for erroneously admitting him to practice and thereby causing him all these problems. Counsel for the Government argues he was simply reminding the jury who was on trial and where the responsibility lay for the Defendant's actions.

The Government's case was strong. The "accepting responsibility" comment was made only once. No objection to the comment was made during the trial. The charge was mail fraud. The Defendant's theory was that he was properly admitted in the Ninth Circuit and thus he did nothing improper despite the clear fact he could not have possibly met the Ninth Circuit admission requirements. Given the charge and Defendant's theory of the case, the one reference to accepting responsibility, while not the best choice of words, would seem a fair comment on the evidence. It does not appear to the Court that the remark was intended to be a comment on the Defendant's

9

failure to testify. Even were the comment improper, the Court has no doubt the comment was harmless and did not deprive the Defendant of a fair trial because the Government's case was so strong. See Chapman v. California, 386 U.S. 18, 24 (1967). In addition, the jury was instructed prior to closing arguments that the Defendant was not required to testify and that they should not draw any adverse inferences from the decision not to testify. See Docket No. 91 at p. 15.

     **5.**     **Rule 404(b)**

The Defendant argues the Government introduced improper 404(b) evidence at trial. Prior to trial the Defendant filed a motion in limine seeking to exclude references to actions taken by the Defendant outside the District of North Dakota in furtherance of the mail fraud scheme. The motion was denied. See Docket No. 89. The Defendant repeats his argument that his actions taken outside the District of North Dakota were extrinsic and should not have been admitted. Specifically, the Defendant attacks the admission of various orders to show cause and the testimony of Mark Fredrickson. The Court again rejects this argument.

The various orders to show cause were issued when the Defendant's scheme began to unravel and were certainly admissible as they provided context and demonstrated the scope of the scheme. Mark Fredrickson worked for the United States District Court for the District of Colorado where the Defendant submitted an application for admission to the bar. That application listed the District of North Dakota as another district where he was admitted. See Exhibit 22. Fredrickson's conversation with the Defendant regarding that application, and any statements the Defendant made to Fredrickson regarding his being licensed to practice in the District of Columbia, were admissible as proof of the scheme. See Docket No. 105 at 75.

The best evidence is always prejudicial. The evidence the Defendant object to is only prejudicial in the sense that it tends to prove the elements of mail fraud. There was nothing improper in the Government's presentation of the evidence which provided proof of mail fraud.

### III.     CONCLUSION

This was not a close case.  The evidentiary basis was quite sufficient and the verdict was predictable.  Accordingly, the motion judgment of acquittal and motion for new trial are **DENIED**.

**IT IS SO ORDERED.**

Dated this 23rd day of June, 2009.

                                                  /s/ *Patrick A. Conmy*
                                                  Patrick A. Conmy, Senior District Judge
                                                          United States District Court